1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BRYON ANDERSON,                          No.  2:10-cv-2833 LKK GGH PS

12              Plaintiff,

13         v.                                   FINDINGS AND RECOMMENDATIONS

14    MCM CONSTRUCTION, INC.,

15              Defendant.

16

17         Plaintiff is proceeding pro se and in forma pauperis with his third amended complaint,

18    seeking relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

19    Pending before the court is defendant's motion for summary judgment or, in the alternative,

20    summary adjudication, filed on September 16, 2013.  ECF No. 46.

21    BACKGROUND

22         This action was commenced on October 20, 2010, and is proceeding on plaintiff's third

23    amended complaint ("TAC"), filed on March 21, 2012.  ECF Nos. 1 and 24.  Plaintiff, an

24    African-American, was employed by defendant MCM Construction ("MCM") in 2006 as a

25    carpenter.  He alleges that MCM paid him less than other workers.  Plaintiff asserts that defendant

26    accused him of complaining that he was being discriminated against, and responded by subjecting

27    him to adverse treatment and finally termination.  Id. at 2.  The TAC also alleges that defendant

28    permitted a hostile work environment and applied different terms and conditions to non-Blacks.

1

1   Id. at 2-3.  It further alleges that defendant discriminated against plaintiff by sending him to work

2   at a different job site where he was forced to dig holes by hand with a shovel even though tractor

3   backhoes were always used for this type of work.  Plaintiff claims that in this manner it took him

4   three weeks to move two feet of dirt whereas with a back hoe he could have completed the job in

5   less than four hours.  Id. at 3.  The TAC alleges that plaintiff, who had more than three years of

6   experience, was wrongfully terminated, but that defendant kept an apprentice carpenter who had

7   less than a month of experience.  After he was terminated, plaintiff alleges that defendant hired

8   two more carpenters less than two weeks later.  Id. at 4.  As a result of the stress, he developed

9   Herpes and became depressed.  Plaintiff alleges discrimination, harassment, wrongful

10  termination, and retaliation under Title VII of the Civil Rights Act.

11  PROCEDURAL HISORY

12      Plaintiff initiated this action by filing his original complaint on October 20, 2010.  ECF

13  No. 1.  Plaintiff's original complaint was dismissed with leave to amend as it lacked a

14  jurisdictional basis for the action.  ECF No. 2.  Plaintiff's first and second amended complaints,

15  ECF Nos. 7 and 9, were dismissed for failure to comply with the requirements of the Civil Rights

16  Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. ECF Nos. 8 and 23.

17  On March 21, 2012, Plaintiff filed his TAC.  ECF No. 24.

18      On July 26, 2012, defendant filed a motion to dismiss alleging that plaintiff failed to plead

19  a claim for relief, he failed to exhaust administrative remedies, and his claims are time barred.

20  ECF No. 29.  On December 17, 2012, this Court issued findings and recommendations stating

21  that defendant's motion should be denied, which were adopted by order on March 6, 2013.  ECF

22  Nos. 34 and 36.  Prior to the adoption of this Court's findings and recommendations, on January

23  11, 2013, defendant filed its answer to plaintiff's TAC.  ECF No. 35.

24      Subsequently, defendant filed its motion for summary judgment or, in the alternative,

25  summary adjudication on September 16, 2013.  ECF No. 46.  On October 11, 2013, plaintiff filed

26  his own motion for summary judgment, which does not directly respond to defendant's motion

27  but instead reasserts plaintiff's claims against defendant and states complaints regarding

28  defendant's lack of cooperation in discovery.  ECF No. 50.  On October 18, 2013, this Court

1   denied plaintiff's motion without prejudice as it was defectively filed and ordered defendant to

2   respond to assertions in plaintiff's motion regarding the parties' failure to meet and confer.  ECF

3   No. 52.  Defendant filed its reply on October 18, 2013, stating that plaintiff and defendant had

4   several conversations over the phone, that plaintiff rebuffed offers to meet at defendant's

5   attorney's office, and that plaintiff apparently did not understand the discovery procedures.  ECF

6   No. 53.  On October 25, 2013, plaintiff filed a response in which he attacks defendant's

7   willingness to meet and again reasserts claims against defendant.  ECF No. 55.[1]

8   DISCUSSION

9         Defendant's motion seeks summary judgment or, in the alternative, summary adjudication

10   pursuant to Fed. R. Civ. P. 56(c) alleging that it is entitled to judgment as a matter of law.

11   I.  Legal Standards for Motion for Summary Judgment

12         The "purpose of summary judgment is to pierce the pleadings and to assess the proof in

13   order to see whether there is a genuine need for trial."  Matsushita Elec. Indus. Co. v. Zenith

14   Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).  Summary judgment is

15   appropriate when it is demonstrated that there exists "no genuine dispute as to any material fact

16   and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under

17   summary judgment practice, the moving party:

18           always bears the initial responsibility of informing the district court
             of the basis for its motion, and identifying those portions of "the
19           pleadings, depositions, answers to interrogatories, and admissions
             on file, together with the affidavits, if any," which it believes
20           demonstrate the absence of a genuine issue of material fact.

21   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

22         If the moving party meets its initial responsibility, the burden then shifts to the opposing

23   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita,

24   475 U.S. at 585–86.  In attempting to establish the existence of this factual dispute, the opposing

25   party may not rely upon the allegations or denials of its pleadings but is required to tender

26   _____

27   [1]   The parties have since filed a joint statement in regard to plaintiff's motion to compel
     discovery; however, it appears that plaintiff does not seek discovery at all, but argues the merits
     of his case including his belief that defendant falsified his time sheets.  ECF No. 58.  Therefore,
28   the discovery motion does not affect the outcome of the instant motion.

1   evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

2   support of its contention that the dispute exists.  See Matsushita, 475 U.S. at 586.  The opposing

3   party must demonstrate that the fact in contention is material, i.e., a fact that might affect the

4   outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

5   248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,

6   809 F.2d 626, 630 (9th Cir.1987), and that the dispute is genuine, i.e., the evidence is such that a

7   reasonable jury could return a verdict for the nonmoving party, see Anderson, 477 U.S. at 248.

8           In the endeavor to establish the existence of a factual dispute, the non-moving party need

9   not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed

10  factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

11  truth at trial." T.W. Elec. Serv., 809 F.2d at 630.  The evidence of the non-moving party is to be

12  believed and all justifiable inferences are to be drawn in its favor.  See Anderson, 477 U.S. at 255.

13  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

14  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

15  Freight Lines, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), aff'd, 810 F.2d 898 (9th Cir.1987).

16  To demonstrate a genuine issue, the opposing party "must do more than simply show that there is

17  some metaphysical doubt as to the material facts. . .  Where the record taken as a whole could not

18  lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

19  Matsushita, 475 U.S. at 586–87 (internal citation and quotation omitted).

20  II.  Legal Standards Relating to Unopposed Motion for Summary Judgment

21          A district court may not grant a motion for summary judgment simply because the

22  nonmoving party does not file opposing material.  See Heinemann v. Satterberg, ___ F.3d ___,

23  2013 WL 5312568 (9th. Cir. Aug. 27, 2013).  Under Rule 56(e), a section entitled "Failing to

24  Properly Support or Address a Fact," "[i]f a party fails to properly support an assertion of fact or

25  fails to properly address another party's assertion of fact . . . the court may: (1) give an

26  opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes

27  of the motion; (3) grant summary judgment if the motion and supporting materials-including the

28  facts considered undisputed-show that the movant is entitled to it; or (4) issue any other

4

1   appropriate order." Fed. R. Civ. P. 56(e) (2010).  Thus, in order to grant summary judgment,

2   district courts must assess the movant's motion and supporting materials and may consider the

3   movant's assertions of fact undisputed in doing so.  Id.; see also Heinemann, 2013 WL 5312568.

4            The hearing for defendant's motion for summary judgment or, in the alternative, summary

5   adjudication, was set for October 17, 2013.  ECF No. 46.  Plaintiff was required to file and serve

6   an opposition no later than fourteen (14) days preceding the noticed hearing date, by October 3,

7   2013.  See Local Rule 230(c).  Plaintiff's motion for summary judgment, ECF No. 50, and his

8   response to defendant's reply to that motion, ECF No. 55, contain statements that could be

9   construed to be made in opposition to defendant's motion.  However, these filings contain

10  nothing more than unsworn assertions such as those set forth in the complaint.  Moreover, both of

11  plaintiff's filings were filed after October 3, 2013, and thus would be untimely oppositions if

12  construed as such.  Furthermore, plaintiff has not met the requirements for opposing a motion for

13  summary judgment or summary adjudication because he has failed to reproduce the itemized facts

14  in the Statement of Undisputed Facts, which were properly filed by defendant with his motion,

15  and admit those facts that are undisputed and deny those that are disputed.  See Local Rule

16  260(b); see also Fed. R. Civ. P. 56(c).  Lastly, and most importantly, although plaintiff argues in

17  his filings that he has submitted evidence to the court which negates defendant's evidence, he has

18  failed to file those evidentiary documents with the court and cite to those documents in his filings.

19  Id.  He has made no filings of facts on the merits under penalty of perjury (including the

20  complaints), nor has he submitted discovery responses of defendant which might create an issue

21  of fact.  The motion for summary judgment is essentially unopposed.  The question becomes what

22  to do, if anything, in terms of coaching plaintiff to make an opposition to this motion.

23  III. Pro Se Status

24           The court should consider plaintiff's pro se status.  Nevertheless, such consideration

25  should not, in the context of the case, cross the line to advocacy for plaintiff.  "District judges

26  have no obligation to act as counsel or paralegal to pro se litigants."  Piler v. Ford, 542 U.S. 225,

27  231, 124 S. Ct. __ (2004).  Nor should an unrepresented litigant have the absolute right to a "do-

28  over" in the situation where the first attempt at opposing a summary judgment is deficient.

In the Ninth Circuit, there are essentially three types of civil litigants: those represented by counsel, those who are not prisoners but are representing themselves in a civil action, and prisoner pro se civil litigants.  With respect to summary judgment, courts are required to give the unrepresented prisoner specific guidance concerning what is expected in an opposition to a summary judgment motion.  See Crowley v. Bannister, 734 F.3d 967, 973 (9th Cir. 2013) citing Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998 (en banc)); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  However, the Ninth Circuit has expressly held that the Rand/Klingele notice is *not* required in a non-prisoner civil action where plaintiff is representing himself pro se.  Bias v. Mognihan, 508 F.3d 1212, 1223 (9th Cir. 2007).  Indeed, the Ninth Circuit has long held that pro se litigants in the ordinary civil context are held to the same standards in terms of compliance with rules as the represented litigant. Jacobsen v. Filler, 790 F.2d 1362, 1364-65 (9th Cir. 1986).  The undersigned does not read these cases as precluding the giving of direction in opposing a summary judgment in the non-prisoner pro se case, especially in light of Rule 56(e) set forth above; such direction is simply not required.  The court should exercise discretion on a case-by-case basis with respect to the direction necessary.

In exercising that discretion in this case, the undersigned has determined not to give the summary judgment notice in that such would require the complete "do-over" of plaintiff's opposition referenced above.  In finding not to exercise discretion, the undersigned is not basing his decision on the more technical aspects of summary judgment practice, i.e., the filing of disputed/undisputed factual statements, nor even the untimeliness of plaintiff's opposition.  These deficiencies could, and would, be excused here.  Rather, the undersigned bases the decision on the factual context of this case and the complete failure by plaintiff to produce any evidentiary material to oppose the motion.

As discussed below, and as is evident from the record, the case involves a dispute in the employment context which only stretched over a relatively short period—a few weeks of employment.  Plaintiff's allegations of discrimination just barely allow the case to continue as a Title VII case.  For example, plaintiff alleges that he was paid at a lower rate than his co-workers.  However, defendant's motion persuasively establishes that the employer was bound to pay *all*

1   workers at union scale wages, and plaintiff's scale was adjusted higher at his request even though

2   the employer was under no obligation to do so.  Plaintiff's allegations of harassment on the job

3   are fairly *de minimis*, and have little, if anything, to do with discrimination.  Plaintiff's main

4   complaint, that he was forced to dig by hand when a back hoe would have been better, is seen in a

5   much softer light when one understands defendant's unopposed factual assertions that the

6   particular digging was not susceptible to backhoe operation, and plaintiff had lesser experience on

7   the job than most of his co-workers.  Plaintiff's termination claim is more akin to a routine layoff.

8          The court will assess defendant's motion on the present record.

9   IV.  Defendant's Claims

10         In its motion, defendant argues that plaintiff failed to exhaust his administrative remedies,

11   that he was never subjected to discrimination, racial harassment, or retaliation, and that he was

12   not wrongfully terminated.[2]  ECF No. 46.

13         A.  Exhaustion of Administrative Remedies

14         Defendant alleges that plaintiff's claims under Title VII are time barred because he failed

15   to name defendant in this action until roughly two years after he received a Right to Sue notice

16   from the U.S. Equal Employment Opportunity Commission.  ECF No. 46 at 10-11.  Thus,

17   defendant claims, plaintiff's TAC must be dismissed.  Defendant, however, has previously made

18   this argument to this Court in its motion to dismiss, filed on July 26, 2012.  ECF No. 29.  In

19   denying defendant's motion, this Court found that because defendant knew or should have known

20   that an action would have been brought against it the TAC relates back to the date of the filing of

21   the original complaint and is not time barred.  ECF Nos. 34 and 36.  That decision should remain

22   dispositive of the issue.

23   /////

24   /////

25

26   [2]  Defendant states that because plaintiff "has filed several documents with the Court purporting
    to allege claims that are not clearly separated and identified" it has addressed each claim it
27   believes "to be alleged in the documents [plaintiff] has filed with the Court."  ECF No. 46 at 1
    n.1.  This Court agrees with defendant's assessment of both plaintiff's TAC and the need to
28   address potential claims that may be more clearly delineated in prior filings.

1      B. <u>Title VII Claims</u>

2          Plaintiff's TAC alleges that he was a member of a protected class, that defendant refused

3   to pay him the correct wage, but that "non-Blacks" were paid the correct wage, that an apprentice

4   carpenter with less than a month's experience was kept on while plaintiff was terminated,[3] that

5   defendant accused plaintiff of complaining that he was being discriminated against, that

6   defendant applied "different standards of compensation, or different terms and conditions to non-

7   Blacks," and that after terminating him, defendant hired two more carpenters less than two weeks

8   later.  ECF No. 24.

9          Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., makes it an unlawful

10  employment practice for an employer to "fail or refuse to hire or to discharge any individual, or

11  otherwise to discriminate against any individual with respect to his compensation, terms,

12  conditions, or privileges of employment, because of such individual's *race, color, religion, sex,*

13  *or national origin*."  <u>Id.</u>, § 2000e-2(a)(1) (emphasis added).  Title VII also makes it unlawful for

14  an employer to "discriminate against any of his employees or applicants for employment . . .

15  because he has opposed any . . . unlawful employment practice . . . or because he has made a

16  charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

17  hearing under this subchapter.  A plaintiff may show violation of Title VII by proving disparate

18  treatment or disparate impact, or by proving the existence of a hostile work environment.  <u>Sischo–</u>

19  <u>Nownejah v. Merced Community College Dist.</u>, 934 F.2d 1104, 1109 (9th Cir. 1991), <u>superseded</u>

20  <u>by statute on other grounds</u> as recognized in <u>Dominguez–Curry v. Nevada Transp. Dep't.</u>, 424

21  F.3d 1027, 1041 (9th Cir. 2005).  If the employer permits the work environment to be permeated

22  by hostility based on the emphasized protected categories, this hostile work environment itself

23  violates Title VII.  <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57, 106 S. Ct. 2399 (1986).

24  /////

25  /////

26

---

27  [3]  Plaintiff does not state in the TAC that the inexperienced carpenter was Caucasian.  However, in his opposition to defendant's motion to dismiss, plaintiff clarified that the inexperienced
28  carpenter was Caucasian.  ECF No. 20 at 3.

1       1. <u>Race Discrimination, Harassment, and Wrongful Termination</u>

2           In disparate treatment cases, plaintiffs can prove intentional discrimination through direct

3   or indirect evidence.  "Direct evidence is evidence which, if believed, proves the fact of

4   discriminatory animus without inference or presumption."  <u>Godwin v. Hunt Wesson, Inc.</u>, 150

5   F.3d 1217, 1221 (9th Cir. 1998) (citation and internal quotation and editing marks omitted).

6   Because direct proof of intentional discrimination is rare, disparate treatment claims may be

7   proved circumstantially.  <u>See</u> <u>Dominguez–Curry</u>, 424 F.3d at 1037.  To do so, plaintiffs must

8   satisfy the burden-shifting analysis set out by the Supreme Court in <u>McDonnell Douglas Corp. v.</u>

9   <u>Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973), and <u>Texas Dept. of Community Affairs v.</u>

10  <u>Burdine</u>, 450 U.S. 248, 101 S. Ct. 1089 (1981).  <u>Dominguez–Curry</u>, 424 F.3d at 1037.

11          Plaintiff has provided no direct evidence of racial discrimination or harassment that, if

12  believed, proves the fact of discriminatory animus without inference or presumption.  Thus,

13  plaintiff's claims for race discrimination and retaliation under Title VII are subject to the

14  <u>McDonnell</u> Douglas burden-shifting analysis used at summary judgment to determine whether

15  there are triable issues of fact for resolution by a jury.  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. 792.

16  Under <u>McDonnell</u> Douglas,

17              a plaintiff must first establish a prima facie case of discrimination
                [or other illegal conduct].  The burden then shifts to the employer to
18              articulate a legitimate, nondiscriminatory reason for its employment
                action.  If the employer meets this burden, the presumption of
19              intentional discrimination [or other illegal conduct] disappears, but
                the plaintiff can still prove disparate treatment by, for instance,
20              offering evidence demonstrating that the employer's explanation is
                pretextual.
21

22  <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 50 n. 3, 124 S. Ct. 513 (2003) (citations omitted).

23          Plaintiff has the burden of establishing a prima facie case by showing that "(1) he is a

24  member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse

25  employment action; and (4) similarly situated individuals outside his protected class were treated

26  more favorably, or other circumstances surrounding the adverse employment action give rise to

27  an inference of discrimination."  <u>Peterson v. Hewlett–Packard Co.</u>, 358 F.3d 599, 603 (9th Cir.

28  2004).  The Ninth Circuit has held that a plaintiff's burden in establishing a prima facie case of

9

1   discrimination is "minimal." Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1094 (9th Cir. 2005).

2        If plaintiff proffers sufficient evidence to establish genuine issues of material fact, the

3   burden shifts to defendant. Raytheon Co., 540 U.S. at 50.  Defendant's burden is to articulate a

4   legitimate, nondiscriminatory reason for its employment action.  Id.  If defendant meets its

5   burden, the only remaining question would be whether plaintiff could prove sufficient evidence

6   from which a jury could conclude that defendant's stated reason was in fact pretext.  Id. at 51.

7        "[A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the

8   employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or

9   otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely

10  motivated the employer." Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1127

11  (9th Cir. 2000) (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998)).

12  Plaintiffs may rely on the same evidence used to establish a prima facie case or put forth

13  additional evidence.  See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000); see

14  also Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 (9th Cir. 1994).  "[I]n those cases where the

15  prima facie case consists of no more than the minimum necessary to create a presumption of

16  discrimination under McDonnell Douglas, plaintiff has failed to raise a triable issue of fact."

17  Wallis, 26 F.3d at 890.  When plaintiffs present direct evidence that the proffered explanation is a

18  pretext for discrimination, "very little evidence" is required to avoid summary judgment.  EEOC

19  v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir.2009).  In contrast, when plaintiffs rely on

20  circumstantial evidence, "'that evidence must be specific and substantial to defeat the employer's

21  motion for summary judgment.'"  Id.  (quoting Coghlan, 413 F.3d at 1095).

22        The Ninth Circuit has instructed that district courts must be cautious in granting summary

23  judgment for employers on discrimination claims.  See Lam v. Univ. of Hawai'i, 40 F.3d 1551,

24  1564 (9th Cir. 1994) ("'We require very little evidence to survive summary judgment' in a

25  discrimination case, 'because the ultimate question is one that can only be resolved through a

26  "searching inquiry"—one that is most appropriately conducted by the factfinder.'") (quoting

27  Sischo–Nownejad, 934 F.2d at 1111.

28  /////

1        Plaintiff is an African–American who was terminated/laid off, thus satisfying the first and

2    third elements for prima facie race discrimination.  Defendant does not assert that plaintiff failed

3    to meet the second prong – whether plaintiff was qualified for his position.  Defendant does

4    argue, however, that plaintiff cannot meet the fourth prong of the test because there is no

5    evidence that his layoff or any discrepancy in pay was based on his race.  ECF No. 46-1 at 13.

6    Defendant also contends that because it offers evidence justifying plaintiff's layoff, the burden

7    shifts back to plaintiff and that plaintiff has failed to meet that burden.  Id.

8        Given the plaintiff's pro se status and the minimal burden to establish a prima facie case

9    of discrimination, see Coghlan, 413 F.3d at 1094, and despite the failure to supply any *evidence*,

10   this Court finds that plaintiff's unsworn allegations in the TAC are sufficient to meet the showing

11   required by the fourth prong of the McDonnell Douglas analysis.  Plaintiff has alleged that

12   defendant refused to pay him the correct wage, but that "non-Blacks" were paid the correct wage.

13   He has also alleged that a white apprentice carpenter with less than a month's experience was

14   kept on while plaintiff was terminated.  Thus, plaintiff has asserted, albeit in minimal fashion and

15   without evidence, that similarly situated individuals outside his protected class were treated more

16   favorably.

17       Nevertheless, defendant offers several legitimate, nondiscriminatory reasons for its

18   employment actions.  In doing so, defendant points to its statement of undisputed facts which this

19   Court considers undisputed by plaintiff due to his failure to file an opposition.  See Fed. R. Civ.

20   P. 56(e).  As it pertains to plaintiff's claims, defendant had a discriminatory motive in making

21   him dig dirt by hand, using a shovel, defendant asserts that digging soil is a normal job for any

22   field employee and that such work was necessary because dirt around concrete piles cannot be

23   excavated with a backhoe.  ECF No. 46-2 at 5.  Regarding plaintiff's claims of a hostile jobsite,

24   defendant states that the job duties assigned to plaintiff were customary and that plaintiff never

25   complained about unlawful treatment.  Id. at 4-5.  In plaintiff's deposition he made statements

26   that he was harassed by one of defendant's employees, but admitted that this employee did not

27   make any derogatory or offensive comments about plaintiff's race.  Id. at 16-17.  Pertaining to

28   plaintiff's claims that he was not paid the correct wages, defendant asserts that both it and

1   plaintiff are bound by the terms of the Master Agreement, that plaintiff's rate of pay was initially

2   set by his union based on his education and experience, and that when plaintiff complained of his

3   pay defendant gave him a raise although he was not entitled to one under the agreement.  Id. at 2-

4   3.  Finally, defendant asserts that plaintiff's firing was due to defendant's reduction in workforce

5   at the project plaintiff was working on and that plaintiff was chosen to be laid off due to excessive

6   absences and tardiness, which alone may be sufficient for granting defendant's motion.  Id. at 5;

7   See Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 600 (9th Cir. 1996) (summary

8   judgment is appropriate if the plaintiff is unable to show that she was performing her job in a

9   satisfactory manner).  Defendant has met its burden of articulating legitimate and

10  nondiscriminatory reasons for its actions and its reasons are well supported by the record.  Thus,

11  the burden shifts back to plaintiff.

12      Because plaintiff has failed to file an opposition to defendant's motion, plaintiff has failed

13  to meet his burden of proving with sufficient facts that defendant's stated reasons are in fact

14  pretext.  Raytheon Co., 540 U.S. at 51.  Even if plaintiff opposed defendant's motion, it seems

15  unlikely that he would be able to show that defendant's explanations are internally inconsistent or

16  otherwise not believable, or that unlawful discrimination more likely motivated the employer.

17  Chuang, 225 F.3d at 1127.  In considering plaintiff's allegations of racial discrimination, this

18  Court has looked to his original complaint, three amended complaints, and statements from his

19  deposition.  In all, plaintiff only makes attenuated assertions of racial discrimination and has

20  provided no evidence aside from his allegations to support his claims. Thus, his racial

21  discrimination claim should not endure defendant's motion.

22      To the extent that plaintiff has brought separate causes of action for racial discrimination,

23  racial harassment, and wrongful termination under Title VII, the latter claims are also insufficient.

24      Subjecting employees to a racially hostile work environment can be an independent

25  violation of Title VII.  Patterson v. McLean Credit Union, 491 U.S. 164, 179, 109 S. Ct. 2363,

26  2374 (1989).  Plaintiff's harassment claim is comprised of complaints regarding his job duties,

27  which are customary for field employees like plaintiff, and also of an incident involving another

28  employee, which was singular and not racially motivated.  These complaints are wholly

1    insufficient for establishing a claim of racial harassment.  See Vasquez v. County of Los Angeles,

2    349 F.3d 634, 642 (9th Cir.2003) (racial harassment involves a plaintiff being subjected to verbal

3    or physical conduct of a racial nature); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.

4    101, 115, 122 S. Ct. 2061 (2002) (a hostile work environment by its very nature involves repeated

5    conduct).  Plaintiff has not made sufficient allegations for a claim of racial harassment under Title

6    VII.

7         A claim of wrongful termination under Title VII, follows the same burden-shifting

8    analysis as a claim for racial discrimination.  Aragon v. Republic Silver State Disposal, Inc., 292

9    F.3d 654, 659 (9th Cir.2002).  For that reason, and because plaintiff's claim for wrongful

10   termination under Title VII is essentially identical to his racial discrimination claim, his wrongful

11   termination claim should not withstand defendant's motion.

12        Accordingly, defendant's motion for summary judgment should be granted as to

13   plaintiff's claims of racial discrimination, racial harassment, and wrongful termination under Title

14   VII.

15                    2.  Retaliation

16        As previously discussed, employers may not retaliate against employees who have

17   "opposed any practice made an unlawful employment practice" by Title VII.  42 U.S.C. § 2000e-

18   3(a).  When determining a retaliation case, the Ninth Circuit, like most circuits, follows the

19   general rule regarding proof of Title VII violations as set forth McDonnell Douglas.  See Miller v.

20   Fairchild Industries, Inc., 797 F.2d 727, 730-31 (9th Cir. 1986).

21        To establish a prima facie case of prohibited retaliation, plaintiff must prove that: "(1) he

22   engaged in activity protected by Title VII;[4] (2) the employer made an adverse employment

23   decision;[5] and, (3) a causal connection existed between the two."  Folkerson v. Circus Circus

24   Enterprises, Inc., 107 F.3d 754, 755 (9th Cir. 1997).  Once a plaintiff establishes this prima facie

---

25   [4]  The fact that an employee opposed unlawful employment practices and/or participated in Title

26   VII proceedings will establish this element.  Hochstadt v. Worcester Foundation for Experimental
     Biology, 425 F.Supp. 318, 324 (D.Mass. 1976).

27   [5]  Both prima facie cases of race discrimination and retaliation require that the plaintiff
     demonstrate an adverse employment action.  See Trent v. Valley Elec. Ass'n., 41 F.3d 524, 526

28   (9th Cir. 1994).

1  case, the McDonnell Douglas burden shifting analysis applies.  Ray v. Henderson, 217 F.3d 1234,

2  1240 (9th Cir. 2000).

3      The issue of what constitutes an adverse employment decision has recently been

4  addressed in Burlington v. N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405 (2006).

5  The court interpreted the anti-retaliation provision of Title VII broadly to include activities

6  beyond the workplace and beyond "ultimate employment decisions."  The court set forth a new

7  standard:  "a plaintiff must show that a reasonable employee would have found the challenged

8  action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable

9  worker from making or supporting a charge of discrimination.'"  Id. at 2415, quoting Rochon v.

10  Gonzales, 438 F.3d 1211, 1219 (D.C.Cir. 2006), and Washington v. Illinois Dept. of Revenue,

11  420 F.3d 658, 662 (7th Cir. 2005).  "Petty slights or minor annoyances that often take place at

12  work and that all employees experience" do not constitute materially adverse action.  Id.

13      A causal connection may be shown by raising an inference that the discrimination

14  complaint was the probable reason for the adverse employment decision.  Folkerson, 107 F.3d at

15  755.  Evidence of a causal connection, however, must consist of more than "mere allegation and

16  speculation."  See Nelson v. Pima Community College, 83 F.3d 1075, 1081 (9th Cir. 1996).

17      Retaliation is not directly alleged in plaintiff's TAC; however, in his second amended

18  complaint he contends that he was retaliated against at work and fired because there was a phone

19  call placed to his supervisor informing the supervisor that plaintiff was receiving unlawful

20  treatment.  ECF No. 9 at 2.  Although defendant does not address this incident, likely because it is

21  not asserted in plaintiff's TAC, defendant does address plaintiff's claim that defendant

22  discriminatingly paid him a lower hourly wage.  Outside of these incidents, plaintiff makes no

23  claim that he engaged in activity protected by Title VII that resulted in an adverse employment

24  decision.

25      Plaintiff's retaliation claim also fails.  First, he has not sufficiently shown a causal

26  connection between either the phone call complaint or the hourly wage issue and the adverse

27  employment decisions.  There is no indication that plaintiff's actions are probable reasons for his

28  shovel digging duties or his subsequent firing.  The shovel digging duties have been shown to be

14

1   customary in nature and necessary given the location of the dirt.  Plaintiff has not provided any

2   reason to believe that this duty was assigned in a retaliatory manner.  Also, it has been shown that

3   plaintiff's request for a higher hourly salary was granted without incident even though plaintiff

4   was not qualified for the higher wage.  Again, plaintiff has provided no connection between his

5   request and his job duties or subsequent firing.  Furthermore, defendant has shown that plaintiff

6   was laid off, subject to rehire, because the project was slowing down, it required fewer workers,

7   and plaintiff had been absent and tardy.[6]  Plaintiff has not provided sufficient evidence to

8   maintain a retaliation claim against defendant.  Additionally, assuming that plaintiff has

9   established a prima facie case of retaliation under Title VII, defendant has articulated legitimate,

10  nonretaliatory reasons for its decisions.  Because plaintiff has failed to oppose defendant's

11  motion, he has failed to meet his burden of demonstrating that reasons given were merely a

12  pretext for impermissible retaliation.

13          Defendant's motion for summary judgment as to this claim should be granted.

14          C.  Wrongful Termination In Violation of Public Policy

15          Plaintiff alleges that he "suffered an adverse employment action due to [defendant's] false

16  accusation . . . cause[ing] MCM to apply different standards of compensation, or different terms

17  [and] conditions to non-Blacks."  ECF No. 24 at 2.  Specifically under a subheading entitled

18  "Wrongful Termination," plaintiff alleges that "[b]ecause of MCM's actions involving

19  discrimination I was terminated."  Id. at 4.

20          An employer may not terminate employment for a reason that contravenes fundamental

21  public policy grounded in a specific constitutional or statutory provision.  Colores v. Bd. of

22  Trustees, 105 Cal.App.4th 1293, 1306, 130 Cal.Rptr.2d 347 (2003) (citing Turner v. Anheuser–

23  Busch, Inc., 7 Cal.4th 1238, 1252, 32 Cal.Rptr.2d 223, 876 P.2d 1022 (1994)). To sustain a

24  wrongful termination claim in violation of public policy, the plaintiff must establish that the

25  dismissal violated a policy that is: (1) fundamental; (2) beneficial for the public; and (3)

26  embodied in a statute or constitutional provision.  Id. at 1307, 130 Cal.Rptr.2d 347.

27  _____

28  [6] According to defendant, plaintiff never sought to be rehired.

15

1    Here, plaintiff fails to identify any public policy that his discharge may have violated, yet

2    alone presented any evidence showing any public policy was violated.  Further, as discussed

3    above, he has presented no evidence to support a claim of retaliation or discrimination under Title

4    VII.  Defendant should be entitled to summary judgment on this claim.

5         D.  Equal Pay Act

6    Defendant correctly asserts that this Court has dismissed plaintiff's claims under the Equal

7    Pay Act, which is alluded to by plaintiff in his TAC.  This Court previously found that plaintiff's

8    TAC does not state a claim under the Equal Pay Act.  ECF Nos. 34 and 36.  Thus, defendant's

9    assertions should remain unnecessary.

10   CONCLUSION

11   Accordingly, IT IS HEREBY RECOMMENDED that defendant's September 16, 2013

12   motion for summary judgment, ECF No. 46, be GRANTED, and judgment be entered in favor of

13   defendant.

14   These findings and recommendations are submitted to the United States District Judge

15   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

16   after being served with these findings and recommendations, any party may file written

17   objections with the court and serve a copy on all parties.  Such a document should be captioned

18   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

19   shall be served and filed within fourteen days after service of the objections.  The parties are

20   advised that failure to file objections within the specified time may waive the right to appeal the

21   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22   Dated: December 3, 2013

23        /s/ Gregory G. Hollows

24        UNITED STATES MAGISTRATE JUDGE

25

26

27   GGH: 33

28

16